I'd like to begin today with the appointments clause defects in the statute, and then I'll turn to explain why Section 713 must be invalidated and hold. In the history of our nation, no statute has ever done what Section 713 purports to do, give a mere employee unreviewable authority to overturn a cabinet secretary, and there's a reason why. The appointments clause doesn't allow it. Section 713 makes the VA secretary's removal and disciplinary decisions appealable to the MSPB, but it requires an administrative judge to hear and decide that appeal, and it makes that decision final. There's no board review. Can we, speaking only for myself, I prefer if you maybe started talking about some of the separability or other questions that contained in your argument. Absolutely, Your Honor. Okay. But before you get there, just a quick preliminary question. If there had been a review provision to the MSPB itself from the AJA, but then no further review, no judicial review, would that have been constitutional? As Section 713E2 is written. No, I'm asking you a hypothetical. Not necessarily, Your Honor. Why not? Because even when subject to MSPB review, administrative judges would remain inferior officers. Right, okay. But aside from that, what if, instead of hooking up the review from the VA termination decision to the AJA, what if it was just to the MSPB itself? So if the MSPB itself reviewed the Secretary's removal decision. Right. And then there was no judicial review. Would that be constitutionally valid? It would cure the appointments clause problem, because the board members themselves are appointed by the President. Does the due process clause of the Constitution require appellate review in this court? I think that's the question that Judge Chin's asking you. Article 3 requires appellate review in this court, but... Does Congress provide that there's no access to the court? Not for constitutional claims like the ones that Ms. Hellman is raising here. Congress can certainly, in some sense, circumscribe the authority of the courts to review perhaps factual questions. I believe this court's decision in Raleigh spoke to that. But to completely foreclose review of the constitutional claims, that wouldn't be permissible. In Section 713E2 actually doesn't do that. The text of that provision simply says that the decision of the administrative judge... Okay. So this goes to whether courts have jurisdiction to hear constitutional challenges. Yes. I guess I'm just talking about the more ordinary case where someone gets terminated, and then hypothetically it went directly to the MSPB itself. The MSPB, say, affirmed it, but there was no provision for any judicial review. In fact, it was restricted to the MSPB as being the final decider or reviewer. That structure itself would be constitutional. At least there wouldn't be an appointments clause problem. There wouldn't be any other problem in terms of limitations on reviewability. No, it would not be an appointments clause problem. Whether or not the statute foreclosed review by the courts would depend on how clear Congress was in providing that. And certainly, it's entirely within Congress's realm to foreclose review of some questions. I don't think the court ultimately needs to decide how far Congress's authority extends in that respect. Why not? I mean, we're talking about various problems with the statute as written, at least in your view. And with respect to the appointments clause, it has to do with final word by the AJs. So now we're looking at questions. If we would agree with you on the appointments clause matter, we're looking at how to restructure and what, if anything, we have authority to restructure. So one of those arguments would be that, okay, we can just impose judicial review, which Congress left up. Or alternatively, if we're going to try to save the statute through severability, whether we could sever just the portion that doesn't allow MSPB for MSPB review, but not get rid of, well, subsilentia, kind of, they say. There's not going to be any review, which includes MSPB review or judicial review. So I guess, I think what my colleagues may be asking is, if we have to restore, in your view, MSPB review, do we also have to restore judicial review? In my view, Your Honor, Congress hasn't stripped the courts of judicial review, at least with respect to the claims that we are raising here. Well, why not? If the AHA's decision is final, doesn't that mean that it's not appealable or reviewable? Leaving aside the constitutional questions, like to review the appointment clause issue. But on the regular run-of-the-mind cases that Judge Chen was referring to, isn't it clear that the statute is currently drafted or closes both MSPB and judicial review? Even under the regular case not involving constitutional questions, Congress still has to be explicitly clear in its desire not to allow judicial review. In Riley, this court, and then in Lindahl, the Supreme Court, look to similar language. Well, it says the decision of an administrative judge under paragraph 1 shall be final and shall not be subject to any further appeal. How else could Congress have said no judicial review? How much clearer could it have been? There's any number of options that Congress could have suggested. It could have specifically described the extent and scope of that review with knowledge of cases like Riley and Lindahl. It could have explicitly referenced those decisions or said that Section 713E2, the jurisdiction stripping language, was intended to foreclose even review of things like critical legal errors or substantial legal errors. Recently, the Supreme Court in Clozo was addressing language that was similar to the language here. In there, the court noted that probably the language in that case would not extend to constitutional claims, but it even went a little bit further and referenced, I think, shenanigans was the word that the court used, but noted that perhaps if the patent trial and appeal board was issuing a decision that was completely outside of its authority or based on something it didn't have statutory authority to do, that that decision would be reviewable as well. So, Congress needs to be abundantly clear. It was aware of decisions like Riley and Lindahl when it passed this statute, and it would really have to make clear that it was intending to foreclose even that circumscribed limited amount of review that those decisions allowed. Well, your time is going by partly because we've been asking a jurisdictional question that has two levels to it. The one level is the Riley level, which is, can we hear this case at all? And the other question started off with Judge Chin, which was, in the grand order of things, does the Congress need to provide judicial review, period? So, it seems to me that I've moved the ball along here a little bit. You're standing on Riley, and you're saying you view Riley as being on all fours with this case in terms of the jurisdictional issue, and we're bound by Riley. This panel doesn't have the authority to do anything else. So, assume that we have jurisdiction to hear the case. Your argument is that this statute is overwhelmingly unconstitutional. You believe it's unconstitutional as a matter of an Appointments Clause problem, and you believe it's unconstitutional in a due process matter based on what happens at the A.J. and the Board once you get there. Let's assume for purposes of argument only that you're right on the Appointments Clause, but wrong on the due process issue, so that the only fly in the ointment here in 713 is an Appointments Clause problem. That being the case, what's the remedy? Why do we have to strike the whole statute down? The entirety of Section 713 needs to be invalidated, because when a statute contains unconstitutional provision, the statute must fall unless what would remain operates in a manner consistent with the intent of Congress, and that doesn't happen here. Is that really the standard under A.R. and the other cases? Isn't the standard correctly stated that we have to look at the statute and say, is this closer to what Congress would have wanted, the smaller piece than what it enacted, rather than anything at all? Is that not the standard we should apply? That's the standard, Your Honor, but when applying that standard and looking at that standard under Alaska Airlines, the Court needs to consider whether the smaller piece would function in a way that's consistent with the intent of Congress. If it doesn't function… But Alaska Airlines isn't the only test. I mean, the problem we've got here is the Supreme Court has had about five opinions that deal with this problem, and they've told us, here are the rules as I understand them, and tell me if you think I'm wrong. The rules are, once you've decided that there's an inconstitutional fly in the ointment here, okay, and we've done that for purposes of argument, only the appointments clause, not the due process. The test is, well, we're supposed to refrain from invalidating more than is necessary, right? That's in the Supreme Court law. Two, we have to strike out, but we can't add words. Just strike out, we can't write anything. Three, is it evident that Congress would not have enacted what's left? That's in the Supreme Court law too. Is it evident that the Congress wouldn't have done this? D, what will, is what's left function in a manner consistent with what Congress did? That's Alaska Airlines. And finally, would Congress have preferred what's left to no statute at all? Right? That's a gamish. You don't disagree with any of those tests, right? I don't, Your Honor. They're all rolled up into a gamish, into a ball. Yes, yes. So Alaska Airlines isn't dominant, it's just there as one, in and out way, right? Yes. Okay, so why do we need to invalidate the entirety of the statute when only the problem is with the finality of the AJA decision? Two reasons. Right. Two reasons, Your Honor. The first is that there's a number of different ways that the appointments caused problem in this case could be fixed. There's a number of different proposals that have been put on the table. There was the original House version. There was the Senate version. There's, of course, the compromise resulting in the statute that now has these problems. The Senate version would be easy, right? The Senate version would be easy. We would just simply take the AJA out of play, and we would erase AJA and write in board. Because the members of the board, there's no appointments clause problem with them, right? The court... Am I right? Yes, there's no... And so if there's no need for any judicial review, if the Congress, both houses, had made the MSPB the stopping point, there wouldn't be an appointments clause problem. No, Your Honor. But both houses didn't take that. You mean that, Your Honor? Yes, there would not be an appointments clause problem if the MSPB presides over the appeal in the first instance. But both houses of Congress didn't do that. The original House version was at will employment. And since this case has been filed, Congress has actually been considering fixes to Section 713. We cite them in our reply brief. There was actually two statutes that have been introduced. One in the Senate, which we cite in our reply brief, and then there's another one in the House, H.R. 5620. And those procedures look nothing like the severability proposal that... What are we supposed to do with that? I mean, I know there's some controversy even to the extent to which we can look back at legislative history preceding an enactment. But what are we supposed to do with subsequent actions by presumably a handful of people? Congress hasn't voted on any of these new provisions yet. We don't know if they're the mine child of two people or a hundred people. So what weight are we supposed to give matters under consideration not by the Congress? I'm not clear on how we can possibly put that into the mix. There's evidence in the legislative history of those two proposals that shows that they were being motivated. I'm sorry. Legislative history of statutes that haven't yet been enacted? Yes, Your Honor, the new proposals. My question is, what do we do with that? I mean, what do we do? Is it real legislative history that we put in the mix the way we consider legislative history when we're talking about the legislative history of proposals that have never been enacted? It's certainly different than legislative history of a statute that has been passed. But what it shows is that there's a number of different ways to fix this problem. And the court should let Congress take the first crack at it. But what about the... What does that mean? Does that mean we simply strike the whole statute down? Yes, Your Honor. In validating Section 713... But the first principle is you only take down as much as is necessary. Right? That's the first principle that governs our behavior. So long as what remains... My question to you is if there's an Appointments Clause problem, but no other, no due process, why isn't it sufficient to excise, simply remove, Section 713E2M3? E2M3. E2 says that the AJ is final and no further review. Right? Yes. So we strike that down. And we say because of the finality. And the 21-day requirement, we strike down because we say that's a backdoor one way of letting the AJ become final. Because the AJ just sits on it for 21 days, and that's the AJ by sitting makes it all final. So why can't we just strike down those two provisions, honor the first principle of only getting rid of what you need to, and leave everything else? What's wrong with that? That would result in a system that is inconsistent with what Congress initially intended. That would result in... But that's only, that's the last arrow. That's only one of the parameters. It is, Your Honor, but allowing... Can we be sure that the Congress would rather have nothing, nothing, than what the statute would look like with E2M3 gone? Yes, we can. Because that statute would require three mandatory layers of review. That would still require the MSPB to refer the case to the administrative judge in the first instance. Then there would be review by the MSPB. And then some level of judicial review by this court. That's even more expansive than what Title V requires. But that inquiry might be scoped down too narrow. I mean, the Act has a lot of other provisions. I mean, the Act gives the VA a lot of new authorities that it didn't have before that Act. For example, you can now remove an FCS employee for poor performance. You can immediately remove that employee right after the determination decision is made. And so during the entire appeal process for that employee, that person will be off the payroll, so to speak. So those are some specific advantages that if you look through the legislative history, you can tell that the thrust of what Congress was going for was to remove these people from their positions as quickly as possible, recognizing there's going to be some limited appeal process. But I guess what I'm trying to figure out is your very narrow, specific focus on reviewability provision might be more of a kind of like a tail wagging the dog. Could you respond to that? Yes, Your Honor. I don't think it is a tail wagging the dog. The legislative history of the bill that was passed shows that having a final and expedited administrative review process was one of the central goals. And requiring three layers rather than just what existed over the previous two mandatory layers would be inconsistent with that objective. Wasn't one of the real goals also to get these people off the rolls as quickly as possible? I mean, that had to have been a focal point of what they were trying to achieve here. And that's done through the work of the earlier provisions of 713, not the ones that we've been discussing. That's certainly the case. But there was an emphasis on not just getting them out of federal employment, but ensuring that the administrative review process is constrained. And there's a reason that the administration… But I'm right, am I not, that if the court were to strike down just a couple of these little subdivisions, then there would be this extended appeal process. But during the time of all of that extended review process, you call that a three-layer review, the SES employee wouldn't be in her position and likewise wouldn't be getting paid that SES dollar. During that entire review process, if it took 30 days, if it took three years, am I right? Yes, that's also true under the Title V procedures as well. Once an employee has been removed and that post-termination review process is ongoing. But there's another reason that… If we only knock out E2 and E3, we still have a congressional mandate that the AJ has to decide the case within 21 days, right? And that might actually extend the process rather than condense it. Well, there's a bit about that. I mean, you have a stat that the MSPB is an agency that's supposed to pay attention to what Congress says. We all know that Congress wanted this process to be quick. And so wouldn't you expect that the rule of the road in these cases, and there aren't very many of them, as the intervener points out, what are the handful of SES people that can possibly bring to these cases. So when one of them pops up, I would expect the rule of the road of the MSPB was we got to hurry up on this. Congress wanted us to move fast. And so the AJ is supposed to hop on to it and decide in 21 days, and the full board would expedite any review that came to it. Simply excising E2 and E3 would not require the MSPB to expedite review. It would only require a 21-day proceeding before the administrative judge. I'm not talking about it required, but I mean the MSPB is obligated to interpret the statutes that Congress writes that affects its jurisdiction. And Congress certainly here made a clear and unmistakable statement that it wanted a quick process, i.e. they wanted it so quick there would be no review. So I would just expect the agency to try to accommodate the rule of the road? It may, but there wouldn't be any statutory requirement to do that. You had one other point that you wanted to make. Well, I just wanted to say, even setting all that aside, there's another reason that the court shouldn't validate the statute entirely, and that's in the name of constitutional avoidance. Simply severing out some of these provisions that we've been talking about would not cure all constitutional defects in the statute. Specifically, there would be questions about whether or not the administrative judge is an inferior officer, even when subject to MSPB review. There would be questions about whether administrative judges are appointed in… …at least for those particular agencies, the ALJs in those agencies are not inferior officers, they're mere employees. Yes, Landry and Lucia read FRAPAT, the Supreme Court case, which I'm sure the court's aware of, to require finality when determining whether someone is an inferior officer. Landry and Lucia looked at the ALJs in those cases and said that the decisions of the ALJs were not final, were absent some affirmative action taken by Landry, the FDIC, and Lucia, the SEC. And they said the inability to render a final decision is the reason that these individuals aren't officers. FRAPAT made clear that what mattered was the ability to take testimony, conduct trials, rule on the admissibility of evidence, and enforce compliance with discovery orders. The language in FRAPAT discussing finality… Well, that's what the ALJs did in Lucia and in Landry, right? Yes. So, I mean, you're saying the D.C. Circuit was way off there? I wouldn't use the words way off there, but… Was it wrong? You think they were wrong? We disagree with the way that the D.C. Circuit has interpreted FRAPAT, but even if the court's inclined to agree with the D.C. Circuit on this question, administrative judges do have the opportunity to issue the final decisions of the board. They issue an initial decision. If 35 days passes, that's the decision of the board. There's no requirement that the MSPB take any affirmative act and no requirement that the MSPB actually issue an affirmative order. I mean, in instances where the losing party decides not to file a petition for review. Yes, you're right. Well, that's not – the AJs don't have – or the SB doesn't have control over that. That's the moving party. I mean, that could always happen. They could have settled the case on the first day, and then there'd be no AJ review. I mean, why shouldn't the constitutionality of it be determined and based on at some point in the proceeding, one side may decide not to challenge a piece of that? That was also true in Lucia. In Lucia, the D.C. Circuit emphasized that even when the losing party doesn't take commission review, the commission still has to adopt an order, enter an order adopting the decision of the ALJ. In Lucia noted, it said this isn't a situation where the mere passage of time makes the decision of the ALJ the decision of the commission. But how does that work under our procedures? I mean, I don't know. If the AJ's decision is not appealed, what happens? Nothing is ordered by the MSPB. Nothing is issued. No piece of paper is issued by the MSPB. The AJ's is just out there. By regulation, the decision of the administrative judge becomes the final decision of the board. But does the board in each individual case, do you know, put out some notice saying that your decision has become our decision because there's been no review? I'm not sure if there's something ministerial akin to the issuance of the mandate. A docket sheet when they say case closed, final? I've just been informed by our administrative counsel that the MSPB doesn't do anything. It doesn't put anything out there. Can I move you, because your clock is running, can I move you to a different kind of issue, which is assuming hypothetically that we were to agree on the appointment clause and we were to agree to some sort of severability. I think there's also a dispute between the parties as to what we do in this case. And I think your position, as I understand it, is if that's the way we decide to go in this case, we should vacate the AJ's decision. And I don't know, even vacate the secretary's decision and go back to square one. I think the other side differs with that. So what's the rationale? I mean, if we were to decide to go that route and just sever and just cut out a few provisions and grant reviewability, why would we not be able to pick up the ball where we left off, which is the AJ's decision is now subject to appeal by the MSPB? Why would we have to wipe the slate clean? A couple reasons. Ryder entitles Ms. Holman to have her case decided by a properly appointed officer. If the court agrees on the appointment clause question, then that's not something that happens here. And she's entitled to have a decision rendered in the first instance by someone who is properly appointed. So you'd want a do-over by the AJ? If the court invalidates the whole thing, then it would have to go back to the VA secretary on the decision. When we simply remove the finality provision, aren't we saying there's no problem with an AJ having decided this case? The problem is that the AJ's decision was given such a considerable weight of authority that it meant the AJ wasn't qualified to do that. Once we remove finality from the AJ's opinion, then it's just an AJ opinion in the way we ordinarily have. Right? It would be, but that still presents appointments clause issues. Why? Because that administrative judge would be someone who is taking testimony, conducting trials, ruling on the admissibility of evidence, and that decision then would become the decision of the board through the mere passage of time. So if we disagreed with you on your position that an AJ, or in every case of the MSDB, there's an appointments clause defect, and we don't think there is one, we in fact think the AJ is an employee, then where are we left? Are we left with just Ms. Hellman's adverse decision in front of the AJ being appealed to the MSDB? It still could be sent back to the VA secretary himself. Because why? Title 38 is not exclusive of Title 5 authority to fire someone. If the court suffers these provisions, that would result in an administrative review scheme that's much different than what Title 38 looked like when the secretary made that decision. And the secretary ought to be given the opportunity and the chance to decide between what Title 38 looks like now and Title 5. Maybe we'll hear from the secretary on that. Oh, I was just going to add, even so, that's not the sort of decision that the court can simply take the representations of counsel on. The D.C. Circuit in administrative cases will send cases back and require a new determination by the agency. Can I just make one point before you sit down that may preserve some ground for you on your rebuttal in case you need it? Because we haven't talked at all about your concern about the due process deficiencies in 713 once a case gets to the board, right? And I think your argument as to why we have to strike the entire statute down is enhanced, of course, if we were to decide with you that you were correct on the due process deficiencies as you see them, right? It is, and that's also a reason to... You stand on what you say in your brief as to the due process deficiencies, right? Yes, I do, Your Honor. I'll preserve the rest of my time. But it's an important issue, and I didn't want to see an argument being made by somebody that said you waived the right to discuss this on your rebuttal. Thank you, Your Honor. I appreciate that. Thank you. All right, let's move on to the side, Mr. Freeman. May it please the Court, Mark Freeman for the government. I'd like to start with Judge Chen's point a few minutes ago. I don't want to set you off. Of course. There's one thing we didn't cover with the other side that I thought you might be the best person to ask. It's just a technical question, which is why is subsection 5 relevant at all? I mean, isn't it correct that in every proceeding, you don't get to the A.J. until somebody's been removed, i.e. put off the role? Right. So why does Congress have to insure anything about subsection 5 in the statute at all? Your Honor, we are candidly also a little confused on that point. As you point out, in Section 7701B of the regular Title V provisions for MSPP appeals, as soon as a person is removed from federal civil service, they no longer receive their pay pending the outcome of the administrative proceeding. It may have been that this was a belt and suspenders provision. It may also have been that this was meant to make clear that the operative stopping point was the administrative judge's decision rather than a board decision. But we take the Court's point. We had the same question about the statute. Thank you. Now go on to Judge Chen. So I just want to go to the severability issue. As Judge Chen pointed out, this statute does a lot more than provide for certain procedures in the MSPB review process. The marquee change made by this statute was that it allows the Secretary of Veterans Affairs to remove senior executives from the department for, among other things, poor performance alone. That is a change from prior law. Before this provision was enacted, a senior executive could be demoted from senior executive service for performance if a performance appraisal so provided. But the Secretary could not, in the Secretary's determinations, remove the person from civil service altogether. That note, in this case, has challenged the constitutionality of Congress's judgment in that respect. And there's no reason why that or many other provisions of Section 713 ought to be set aside just because there is a narrow constitutional difficulty with respect to the review of the administrative judge's decision. But under what you suggest is the way we should slice and dice the statute, it would retain afterwards judicial review as well as MSPB review. That is correct. And do we need that? And if we don't need that necessarily, why wouldn't and wouldn't we slice that up? Is it because it's harder grammatically to figure out and it would put us in a position of rewriting rather than just striking? Is that the reason? Yes, Your Honor, candidly. I agree that what Congress would prefer here, if Congress was doing this, is a scheme that allowed the appointments clause problem by allowing appeals to the Merit Systems Protection Board. And that would cure the appointments clause problem and would not thereafter allow judicial review at all. That is completely constitutional for Congress to have done so. The question is just whether, consistent with the severability principles that Judge Klaminger pointed out earlier, one can get to that result by line editing Section 713E2. Changing the word AJ Board, but I mean what that does is that puts us over in the Senate, right? That's correct. And it's the Federal Circuit saying we like the Senate better than the House. Right. And that's not permissible, right? What the court cannot do, as Your Honor pointed out, is add words and change the legislation. So the question in severability analysis is you tailor the remedy to the problem, you strike the provisions of— Isn't that a little bit silly? I mean I understand the principle of adding words if we were to add new concepts. But what I'm suggesting to you is through adding words we're really doing. I mean if the statute, if E2 had originally been crafted to say shall not be subject to any further appeal in the MSPB or judicial review, then we would have been able to do it. So isn't this a little kind of silly exercise because Congress decided to use these words? We both agree that what their intent was was X, that we can't do what we can to further their intent. I'm in a difficult position here, Your Honor, because I don't want to fight you on what I think Congress would have preferred. I think normally I'm not in a position of standing at this podium and saying an act of Congress is unconstitutional. And normally when people try to line edit statutes it is my job to stand up and say no, no, no, you don't get to add words, you just strike them. So we are hesitant to indulge that form of analysis. But I understand the point and I don't disagree that what Congress would have wanted is to cure the appointments clause problem. And then foreclose judicial review. Now to Judge Fletcher's point earlier, it is absolutely the case that the board, we think, would be obligated to expedite these appeals. And in fact, in an uncodified portion of Section 713, this is 707B of the public law that enacted it, Congress directed the board to promulgate regulations to ensure the expedited processing of these appeals and to waive any regulation that it may have in order to make that possible. But if we retain the 21 days for the AJ, which is what you're proposing we do, can't we make the reasonable argument that that's going to lengthen the appeals process than to curtail it? Because if I'm the MSPB and I get some crummy decision by the AJ – I don't mean crummy, but some inadequate, less than adequate decision because they've only had 21 days to do it, then that 21 days may in fact result in a lengthier proceeding before the MSPB than it would if the AJ just had their normal run of the course. So why would we not strike out the 21 days to just kind of get them to do what's consistent here? Right. So again, I understand the point. I think, though, that we all ought to be obliged to follow Congress's directive to provide for a very fast administrative hearing. And 21 days, although very fast, consistent with the rules that the board has promulgated, a complex set of regulations to ensure the maximum expedited processing consistent with due process, Congress wanted that. That is by itself not constitutionally problematic. But the practical, functional matter is 21 days just too uncomfortable to saying that we can really expect a due process to occur within that time. I think absolutely, Your Honor. What if it was four days? I don't dispute that there could be a period where it is not possible to conduct a proper hearing. 21 days, though, consistent with the regulations promulgated by the board is certainly enough. The judge here issued a 60-page decision covering three different charges and five specifications in a great deal of detail and covered it all in the time provided. So are you acknowledging it's an as-applied challenge and therefore here it's applied, it didn't do it? I mean, there could be a circumstance, right? Not here. For 21, any time you put a restriction on the timing, you're inviting an as-applied challenge. You're inviting an as-applied challenge. And your point is that, well, that may be true, but look here, look what happened in 21 days here. Massive justice is your view, right? I think in this case, Your Honor, I think that the decision was entirely consistent with all of the requirements of the fits and limits. I come back to the question of what would happen if we looked at what Congress really wanted to do here. And Congress wanted to have this speeded-up process. They wanted the Merit Systems Protection Board to be involved. They wanted Ms. Hellman to have a shot, a quick one-time shot at a review in the MSPB. Where she could prevail. Where she could prevail. In theory. I mean, now that she's pled guilty to a federal criminal offense. No, no, no, no. Hypothetically. Hypothetically, yes. You're talking about the Ms. Hellman of the future. Yes. Where she could prevail. Of course, that would make the agency mad because they wanted to get rid of somebody. But because they opened up the door to review. Right. And they didn't have to. They could have just made the Secretary's decision. Completely agree. The House version would have been consistent. So why can't we simply take out, take the EJ out of the action here and do a little rewriting of the statute? Your Honor, I don't have anything more to add than what I said in answer to the Chief Judge earlier. Can you tell us why not the Department of Defendants? Your Honor, it is a... I mean, I don't want to be left high and dry. I'm not... The one difficulty I have is I'm not sure how... You can't speak to this, Mr. General. That is one thing, of course. And in addition to that, I don't know what words the Court would be adding. We do think there are some basic principles of severability law at play here. And we've given the Court our best answer to how we think they ought to apply in these circumstances. But if I may just circle back to Your Honor's point earlier. If the MSPB has the opportunity to review, you're right, the Secretary of Veterans Affairs might be upset if the MSPB countermanded a removal. But you would then not have the anomaly. The reason why I raise that is that it seems to me that the strongest argument that your adversary has here for striking the whole thing down is to say that the Congress did not want a moral level of review beyond just an agency decision. And the reason why they didn't want that was because they were irritated that a certain number of these employees had gotten off the hook as a result of going to the board. But that wish is really a false wish because once you allow the case to go to the AJ, the employee can watch. And the fact that you're going to eat up some more time later on with some more layers of review doesn't really speak to the intent of Congress. Right. I think you may be correct as to Congress's intent with respect to MSPB review. But, of course, Congress did other very important things in this statute, including authorizing the removal of senior executives for performance and suspending certain other limitations that would apply under Title V. Well, let me just follow up with something. I think everybody agrees that once you sever what you propose to sever, and then we ask ourselves with what's left, would a majority of the House and a majority of the Senate vote to pass that version? And I think the answer is no because they would see the problems with the reviewability system that has been created as a result of striking provisions two and three. And I guess what I'm wondering is why isn't that the right lens to look at it? If you strike the provisions that are truly unconstitutional, would the House and the Senate, by a majority vote, have passed what was left? So I understand the question. I guess I disagree with part of the premise, which is the standard. I don't think we ask a sort of legislative horse-trading question about whether particular members would or would not have voted and whether you can get to a majority. What we ask is, as the Supreme Court has said, in any circumstance in which you have severability problems, by hypothesis, Congress cannot have what it enacted. So the question is, would it want what is left when the unconstitutional provisions are stricken compared to the status quo ante, what it had before? And here we know. We had all of these hearings. Congress said, we think the provisions under Title V for the removal of senior executives are insufficient. They do not give the Secretary of Veterans Affairs sufficient tools. They enacted Section 713 as a result. Portions of Section 713 are undisputedly constitutional here, including the marquee provision in 713A and a number of other provisions that, for example, suspend the normal rule that an employee gets 30 days written notice before removal or that provides that a senior executive can't be removed within 120 days of the appointment of the head of the department. These are all provisions that, of course, Congress is within its legislative discretion to suspend. Section 713 suspends them, and there's no constitutional difficulty with them. So there's no reason why, as a matter of severability analysis, those ought to fall. Let me ask you another question. You are proposing to also remove the provision that if the AGA doesn't decide the case within 12 days, the Secretary's decision becomes final. Right. So now there would be no consequence to the AGA's inability or failure to reach a decision within 21 days. Well, there would be no consequence. I didn't mean to interrupt. So then the question is, does that mean that what would happen under that version of the statute if the AGA, for some reason, said, I can't do this in 21 days, but I'll get back to you in two months? Your Honor, I would think that would be a matter of disciplining for the board to discipline one of its own attorneys for disregarding a statute. Well, and leaving discipline aside, what happens to the case? So we think if you strike that provision, it would not have the effect as written now that there's an argument that it becomes final and unreviewable with no fault of the employee. You would still be under a statutory mandate to decide the question within 21 days. Just like many federal employees have statutory and regulatory obligations upon them, which if they do not obey— Would an AGA meet that 21-day statutory obligation if it said on day 21, I agree with the VA Secretary, memo to follow in 60 days? There is such a case right now, as the Court may be aware. It's called the Weiss case, in which an administrative judge did more or less that. And there's dueling appeals on that question in front of the Merit Systems Protection Board, which has suspended that case pending the outcome of this. No, but let me ask you, leaving aside whether they can discipline the AGA for not doing it, what happens in a particular case? If the clock passes, does the MSPB then just, as we would read the statute, as severed as you propose, what happens? I think we would find out, Your Honor, the government would not— No one would argue that as a result merely of the time passing, that the removal of the employee became final and unreviewable. That's the provision which would be stricter. So then there would just be a question, which if the Court is aware, happens in any number of circumstances, when there is a statutory deadline that an administrative agency misses. And sometimes you have mandamus petitions. Sometimes you have employee discipline. You could have any number of other consequences. But it would not have the consequence the statute now says— Well, do you think the MSPB would or should construe the statute as automatically they get the case on day 22? I think it may well be within the authority of the Board to do that. I don't want to speak for them on that question, but I think that might well be within the authority of the Board to do. If I may, I know I'm running out of time here. I wanted to refer just briefly to the question that my friend raised on the other side about whether an administrative judge whose decision is completely reviewable de novo by the Board would nonetheless be an inferior officer. The point I just want to stress is that this is not the case to decide that much bigger and more consequential question. That is the case, as Judge Chen pointed out, that essentially the argument addressed by the D.C. Circuit in the Landry and Lucia cases, there is a nest of other litigation pending around the country involving— But why wouldn't we necessarily decide it? If it's a real issue, it's a live issue. It is a live issue. How do we resolve this case without deciding? What you do is I think you decide one question at a time. Ms. Kelman was removed and her removal was affirmed by a judge whose decision could not be appealed. The remedy for that is to give the case to the Board for the appeal she was unable to have. Then, if she wants to raise this new question, which involves many different considerations from the parties I've briefed here, and then raise it again on review to this Court as a constitutional matter, we can do that in due time. That would give, among other things, the members of the Merit Systems Protection Board, BAR, an opportunity to opine on a question that would affect the validity of agency proceedings in all Title V removals in all extraordinary proceedings. I hear you talking, so why shouldn't we just invalidate the whole statute and let Congress worry about all these issues? Because the—I want to get back to a point that the Chief Judge raised earlier on, which is what are we to make of the bubbling activity in Congress over this statute now that the government took the position that it wasn't going to defend the constitutionality of the finality? When we're trying to decide whether or not to invalidate an entire statute as opposed to doing a little surgery, are we entitled to take into consideration the posture of the Congress at this time with regard to the issue? I think that would be unusual, Your Honor. I don't want to tell the Court it's outside the issue. Is there any case law that says we can't? I distinguish between a situation where we were told that, given the posture of this case, that the leaders of the fight before have all acquiesced and said, well, if we strike the statute again, they don't care. They're not going to make any new legislation. Let's assume that that was on the record in this case. That would tell us one thing, but what we're being told is that they're not one, they're not two, they're not three. They're like six pieces of legislation in the hopper, right? Some of which, that is correct. Some of which have gone nowhere. Some of which, as the Court pointed out earlier, were the proposals of single members. One of which, at least, has the endorsement of the Department of Veterans Affairs. More than just an occasional interest in the subject matter. I think all this speaks to, Your Honor. It was a bipartisan issue before, wasn't it? It is, Your Honor, but I think we have to be very careful here. We cannot presume that we know what Congress would enact on this score, and the possibility that Congress would enact legislation that might moot this case and require some other proceeding is a reason to be cautious about what we decide here and not a reason to do more. Under accepted severability principles, we strike down only the parts that are problematic and leave the rest and let Congress make a judgment about how to respond to that. But they've raised the question that there'd still be a constitutional defect under that severed version. I don't see how we can avoid confronting that. Your Honor, I don't see respectfully how the Court could decide that right now. Because just to take, for example, the Lucia case, the way that a case like that works is if you want to say that the agency's proceedings are unconstitutional because of, as is their argument, the limitations that the Board has on review of one of its own employees' decisions, you raise that argument to the agency itself and give the agency an opportunity to address it, to tell us, this Court and the public, how it understands its relationship with its employees, and then this Court adjudicates the constitutional question in light of that answer. That's what happened in Lucia v. SEC. It is premature here to reach the question. They have not lost the opportunity to raise it. What we do, we respectfully suggest, is decide the question that's in front of you. They were unable to raise that question with the Board because the statute precluded them from getting an appeal to the Board. Send it back for an appeal to the Board. If they want to raise it then, great. If Congress enacts intervening legislation, great. These are all questions that we can decide in due time. There is no reason for the Court to reach out and decide a question that is really not briefed. One last quick question from me. Is it true that when an AJ issues an opinion and then the MSPB doesn't pick it up on its own or there's no request for review to the MSPB, then the ALJ's decision just automatically becomes final without the issuance of some additional order from the Board itself? That is my understanding about how the statute works under 7701 and 7703 of Title V, Your Honor. Yes, let me say just two things about that. First, of course, as I think Your Honor has diverted to, the Merit System Protection Board can and does sous-esponse review decisions of administrative judges that no party has appealed. That underscores that the decision is of the Board and not one of the administrative judge. Second, as Judge Prost pointed out, of course, people are entitled to not appeal adverse decisions against them and there ought not be effectively a waiver and we ought not be drawing constitutional consequences from those private choices. And third, I said two things, there were actually three. And third, that is exactly the sort of question that the court ought to, that is not briefed in this case, that ought to allow, that underscores the reasons why the court ought to send it back in if the petitioner wants to raise that question and come up with a case, an appeal, where everybody briefs that very significant question in due course, that would be the prudent outcome. It is not appropriate, we submit, to decide that much bigger question here. Thank you. Mr. Morley. May it please the court. My name is Michael Morley. I represent the Military and Veterans Group Intervenors. After listening to the oral argument to this point, I'd like to emphasize to the court, this is not a severability case. The crux of the alleged appointments clause problem, and as we explained in our briefs, there actually isn't an appointments clause problem. But the crux of the alleged appointments clause problem that the government and Ms. Hellman contends exists is that a government official was given certain powers, enough powers to render him an officer of the United States, but he wasn't appointed in the correct manner. Whenever we see cases of this structure in the Supreme Court, in the D.C. Circuit, in the Ninth Circuit, whenever we see cases of this structure, the remedy is not to invalidate the powers that make the official an officer of the United States. The remedy has been fix the appointments clause problem. Fix the problem with removal by addressing those legal provisions. Here, we have a federal statute that was recently enacted, not even... So what process exactly are you advocating that we as a court of review, sui sante, tell the government that they should redo, non pro tonque, the appointment of these individuals? Whether the court chooses to order the government to do that, the constitutional defect here lies in the method of appointment. The constitutional defect isn't the fact that Congress gave administrative judges. But if we're left with the constitutional defect, and we have to decide Ms. Hellman's case, and what happens to Ms. Hellman, what do we do with that? What's step two? So the defect, Your Honor, would be in the mode of appointment. So if this court invalidates the delegation of authority to hire administrative judges, it can then remand this case, and as we've seen in other cases where courts have found appointments clause problems with the appointments of ALJs, the courts have held that those problems have been cured if the newly appointed person is given the opportunity to ratify their previous decision. So if this court were to hold that the appointment of administrative judges is unconstitutional, the method of their appointment is unconstitutional, it could then remand this case so that a properly appointed administrative judge, whether it be Judge... But we can't force them to act. Well, you know, there's a lot going on with the transition. It might be months. What if they don't act? I mean, we can't force them to act. We can't tell them to do something. We could just remand it so they would have an opportunity to do something. Correct, Your Honor. So what if they don't act? I mean, how long do we wait? A month goes by and nothing happens. What happens to Ms. Hellman's case? If the government chooses not to make available constitutionally appointed administrative judges, Ms. Hellman would likely have a mandamus issue. Ms. Hellman might have a due process issue. If the government flatly refuses to appoint... What if the government does nothing? That's usually what happens in a lot of... I mean, the government does nothing. We send it back, we say you've got to do something. Does she, like, wait until some magic time under mandamus where it seems reasonable for her to go and complain to us that we've got to force them to act? And then if there's a mandamus petition, are we in a position of forcing them to change the status of these offices or just forcing them to tell us whether they're going to do that or not? I don't understand how this plays out. Well, again, if this court were to invalidate the delegation of hiring authority, the MSPB would have the power, which it currently has, to hire administrative judges itself. But if we invalidate what happened here, doesn't she automatically prevail, at least her case, for prospective information change in other cases? But her case is done, right? If this court looks at appointments clause precedents, such as FEC versus Legitech out of the D.C. Circuit, that hasn't been how other courts have addressed this issue. Where there have been appointments clause defects and those defects were corrected, the government agencies or the government officers were then given an opportunity to review and to ratify the decisions that they previously took while they had a defect in their appointment. None of these cases presented a situation where the government obstinately refused to appoint someone in a constitutionally valid manner. Indeed, it would be remarkable if the government refused to do in a constitutional manner that which it has already done through a delegation of authority. I'll stop you for a second. Is what you're arguing right now premised on whether we conclude that an AJ is an inferior officer? Or is your argument premised on whether we conclude that the AJ under 17E2 is in fact operating as a principal officer? I'm a little confused as to where you're coming from right now. If this court were to conclude that the administrative judge is an inferior officer, then the constitutional defect here would simply be that the merit systems, if there is any, which again, as we explain in our brief, there isn't, but the constitutional defect would either be that the MSTB itself didn't directly hire him or didn't ratify his hiring. So you're suggesting we remand it back and then have the MSTB itself appoint the AJ and all the AJs and then somehow ratify everything that the AJs have been doing. For the past five minutes, you've been talking about that particular question. Do you think to my understanding? Yes, Your Honor. All right. I'm coming back to what the Chief Judge was asking. The MSTB appoints its AJs or finds its AJs and puts them in place for reasons that it knows that we don't know. I mean, they get AJs from other agencies, so they have a process. They've got a lot of AJs. And are you suggesting that we order the MSTB to change the way it finds its AJs in all of its cases, or should it be a particular rule just for these appeals? This court doesn't have to order the MSTB to do anything. If this court believes an employment-disclosed problem exists, it has two possible solutions. It can either invalidate the statute that gave these officers, that gave these officials enough power to become officers, or it could invalidate the defect in their appointment, the delegation of authority from the MSTB down to the bureaucracy to hire administrators. That was a defect in their appointment only in consideration with this case. Nobody's arguing that there's a defect in the way they're appointed because a garden variety of cases are coming up, right? Well, Your Honor, the statute at issue here purports to give all administrative judges within the MSTB the authority to make final decisions regarding SES appeals. It's the one AJ that gets assigned to the case that creates the problem. If, for example, in this particular case, the board had said to itself, we're going to ask the chairman of the board, who has to be sitting in this audience today, we're going to ask her to hear this appeal as an AJ, right? She could have done that under that rule, and there wouldn't have been an employment-disclosed problem. Correct, Your Honor. With regard to the other administrative law judges, though, they still are given power that Ms. Hellman... I'm saying that the unconstitutional power is only peculiar to these handful of cases that are going to come up under 713. Exactly, which is one of the reasons, Your Honor, we argue this statute doesn't actually... What I was trying to get at is what's the scalpel look like when we go tell the MSPB that it's been appointing its AJs the wrong way? Do we tell them, you're going to appoint all your AJs forever, or are you just going to say, whichever AJ we pick, we're going to pick one each time... The cases come and they go to the board, and then they go back to the AJ. The board could say, okay, we're going to appoint you, right? That's all they have to do. So I'm trying to tailor down what size of the cut you have to make with your scalpel to make your provision work. We would certainly believe that that would be a constitutionally sufficient outcome. On the other hand, again, this court doesn't actually need to order the MSPB to do anything. Once the court determines an appointments clause problem exists, if the court comes to that conclusion... Your theory, we could tell the world that we're just going to sit on this case for four or five months, and the merit system protection board can go back and take this particular AJ and appoint that AJ themselves in a nonpartisan way. That AJ could then ratify what they did before, and your deal would all be fine. That's exactly correct, Your Honor, and that's exactly what we saw in FEC versus Legitech, where after the appointment was closed... Are you suggesting that we solve the constitutional problem here by sitting on our hands for a few months, in the light of what I just said? We'll see if the board will cure the problem for us? No, the court doesn't need to delay. Even if the court were to issue a ruling finding that an appointments clause problem exists, if this court looks to Legitech, if the court looks to CFPB versus Gordon, the Ninth Circuit's ruling, if the court looks at the D.C. Circuit's ruling in the CFPB case, whenever we have a problem where a government official has certain powers that trigger employment-related provisions of the Constitution, the court has never responded by striking down those powers. I don't understand. What if we're supposed to remand it? You say we should vacate and remand? Just technically. I mean, we've got to write an opinion. We've got to know what we're doing here. You're saying we should vacate the decision and remand it. The MSPB didn't do anything here. Wouldn't the remand necessarily... Unless and until we rewrite the statute, the remand would have to be to the AJ, right? Ms. Hellman did appeal from the AJ's decision to the MSPB. The MSPB issued a one-page order refusing to hear the appeal, and then this appeal was taken from that order. Was that order issued by the MSPB or by the Secretary of the Board? I would have to review the record, Your Honor, but the order itself isn't included in the documentary sentence. It was a piece of paper that said the Board doesn't have any authority here. Until we rewrite the statute. I mean, if we just kind of vacate, where does the MSPB get in? I mean, where do we have the authority to remand it to the MSPB? You're exactly right, Your Honor. This court shouldn't be in the business of rewriting the statute. There's no need to rewrite the statute. Okay, so where do we get the authority to remand it to the Board versus remanding it, I don't know, to the AJ, back to the Secretary of Veterans Affairs? Well, as counsel has discussed in response to previous questions, the decision of the administrative judge is deemed the decision of the Board, becomes the decision of the Board, and so the AJ's ruling is the final agency action for purposes of this case. Under what, under 713? Yes, Your Honor. Under 713, that's the finality problem. The AJ's decision is final, game is over. Yes, Your Honor. And so if there is an appointments clause problem with that, which you think there's not, but let's assume you think there is one, then we've got to get rid of that. Well, Your Honor, rather than striking down a recently enacted congressional statute that responds to compelling policy problems, the appointments clause problem could just as easily be eliminated simply by invalidating the internal administrative delegation of authority to hire these judges. Comparing the court's role... We have the authority to do that? We can, sitting here on review, invalidate the procedures that they use for appointing the AJ? That's far less intrusive of other branches than invalidating a newly enacted congressional statute, Your Honor. If we were to conclude that 713B2 makes the AJ a principal officer, not an inferior officer, then we just can't have the MSPB itself kind of non-proton appointing the AJ, right? That's correct, Your Honor. So then where are we? Under Morrison and Freytag, Your Honor, even if there is an appointments clause problem here, at most administrative judges must be considered inferior officers. But what if we conclude that when they are operating under the authority of 713B2, they are acting as principal officers? Yes, Your Honor. If this court concludes that these are principal officers parallel to the Attorney General and the Secretary of State who have to be appointed by the President and confirmed by the Senate, then there's nothing that the MSPB itself could do to rectify the problem. So if your proposal is a remand, it doesn't make sense. If this court concludes that they are principal officers. In looking at the Supreme Court's recent PCAOB ruling, the court expressly told us where officials were exercising executive authority but were protected by too many layers of protection from removal, the Supreme Court expressly said, we could solve this problem by blue-lining the statute, which is the exact language they used. We could solve this problem by removing authority from the PCAOB so that we don't have an Article II issue. But instead, the court said, we're going to remedy the constitutional defect simply by removing the true cause of it, which isn't the statutory delegation of powers to them, but rather the protections from removal. Can I just ask you, and I'm sorry to use up the rest of your time, but quickly, if you could tell us if you have a view on the question we've been raising with your friends here, which is that if we feel like judicial review is not necessary and we're going to go to severability right, which I understand your objections to, would we necessarily have to wipe out both review of the MSPB and the judiciary, or should we just slice and dice it so that we get rid of the, I'm sorry, so we put back the MSPB, but we don't restore the judiciary? Well, the narrowest solution is what the Supreme Court precedent, Alaska Airlines, Buckley v. Vallejo itself, advocates in favor of. There are provisions of the statute, in particular the Section A, which empowers the secretary to terminate senior employees for misconduct, which gives them new authority that he previously lacked. The alleged defects with the administrative judge's authority here have nothing to do with that new source of authority, and there's absolutely nothing in the legislative history to suggest that even if Congress had not been permitted to give administrative judges this new expedited appellate authority, that they wouldn't have wanted the secretary to retain this authority. So under traditional severability principles, certainly Section A and many other sections of the statute, other than those directly touching on the administrative judges, would survive. Thank you. Thank you very much. We've gone over. You had something like two minutes left. Why don't you give a total of six minutes if you need it on rebuttal because we've gone over the other side. Thank you. There's one big point that I would like to make on my rebuttal time here, and that's our proposal to invalidate the statute entirely is the only way that the court can avoid significant constitutional questions that would remain. And that would still leave in place the Title V procedures. Under those procedures, when an individual is removed, the board itself can opt to hear an appeal from that removal decision, which, as the court has acknowledged, would cure any appointments clause problem. So there's no need to decide in this case, at least until the MSPB has had the opportunity to determine. The government said it would be premature to address this issue of whether an AJ is an inferior officer. What do you have to say about that? The government said it would be premature to address it now, but it acknowledged that this issue, if remanded under a severance proposal, would percolate back up to this court. If Section 713 is invalidated entirely, that would leave the Secretary to proceed under Title V procedures. Can I just stop you for a second? When you say entirely, why do we have to get rid of A? If only Subsection A is left, Your Honor, that would not allow for any post-termination review whatsoever. Subsection A just gives the Secretary authority to remove the individual. Don't SES officials have any line of review? No, the review for the decision under Subsection A comes later in the statute. Under Title V. Let's assume that all that's happened here is that we keep A, A1. The Secretary can get rid of an SES person for performance or misconduct. Won't that SES official have a Title V review? The subsection… I'm just saying, let's assume we invalidate the entire statute, but as the intervener was suggesting, you preserve A. Yes, there's no avenue for that decision under Subsection A to get to the MSPB. Subsection D… Doesn't Title V say that an SES employee who's removed has access to the board? Section 7701 says that an employee or applicant for employment may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the board under any law, rule, or regulation. There's no law, rule, or regulation that makes a decision under Section 713A appealable to the board, except for what is elsewhere provided in Section 713. So if all that remains is Section A, there's no avenue to get to that MSPB, no avenue for judicial review, and that would violate due process. That would violate due process? Yes, Your Honor. An employee is entitled to pre-termination process and post-termination process. So if there's no… What case says you're entitled to post-termination process? Loudermill. Loudermill says pre-termination. I believe Loudermill says that due process as a whole is looked at as sort of a balancing. If you get a lot of pre-termination process, you don't need as much post-termination. If you don't get that much pre-termination, you'll need a lot of post-termination process to satisfy due process. And simply getting rid of it here, as everyone's acknowledged, Section 713A would expedite the initial front-end procedures as well. And so that would not leave enough post-termination process to satisfy due process, to satisfy Loudermill. But back to my point, if Title V, if the VA proceeds under Title V, the MSPB would have the opportunity to designate a board member to hear the case or to hear the case itself in the first instance. And that would get rid of all these other constitutional problems that have been discussed, that are percolating through the courts in other administrative contexts. And so we would ask the court to invalidate Section 713 entirely as a matter of statutory construction, to find that it's non-separable, to vacate the decision of the administrative judge and to remand. But wait, you vacated and remanded. What happens? I mean, there was originally an appeal by your client from the original action, right? There was an appeal to the board, and then that was removed so that there would, once the statute came into place, the appeal came there. So what's the status of your client if we say that the entire statute falls? If the entire statute falls, then the MSPB would vacate the decision of the secretary, and it would be returned to the secretary. That's what would happen on remand. And would the secretary's decision hold? The secretary would presumably make a new decision about whether to proceed under Title V. Why would the MSPB vacate the decision of the secretary? Because the decision of the secretary was made under subsection A of the statute, and if section 713 is invalidated entirely, then that decision... So the person, Ms. Sullivan, could not be removed for performance anymore. She could be removed for misconduct under Title V. No, but a preferred performance. She could be removed from the senior executive service and placed on the general schedule. Which was the original proposal. I'm sorry, Your Honor. The original removal proposal. That's what I... Under Title V. The original removal proposal was under Title V, yes. But she was removed here for misconduct, not performance. Yes, and that would... The secretary would be entitled to remove her for misconduct or propose removing her for misconduct under Title V if the decision is vacated entirely. Thank you. Thank you very much.